Michael Doggett
DOGGETT LAW OFFICES, PLLC
2120 S. Reserve St., #130
Missoula, MT 59801
Telephone: (406) 442-1160
Facsimile: (406) 258-0398
E-mail:  mike@doggettlawoffice.net
*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JEREMIAH SKAGGS, and JWS BUILDERS, LLC, an Idaho Limited Liability Company, and JOHN DOES 1-10<br><br>Plaintiffs,<br><br>vs.<br><br>CLINTON BOONE, and JOHN DOES I-XXX,<br><br>Defendant. | Cause No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW, the Plaintiffs, by and through counsel of record Doggett Law Offices, PLLC, and for their complaint against the Defendant, states as follows:

### I.     JURISDICTION AND VENUE

1.     This is a tort and breach of contract action arising from a business arrangement and joint venture between the Plaintiffs and Defendant in which the Defendant and Plaintiffs agreed to fabricate machinery to be used in the process of

1

turning hemp into CBD in a facility in Lincoln County, Montana in exchange for payment by Defendant to Plaintiffs for time, materials, and 45% of any remaining profits after expenses.

2. Jurisdiction and venue are proper before this Court because the acts and omissions alleged herein occurred within the jurisdiction of this Court in Lincoln County, Montana and there is complete diversity of jurisdiction. Plaintiff Jeremiah Skaggs is a resident of Idaho, Plaintiff JWS Builders, LLC is an Idaho Limited Liability Company and resident of Idaho, and Defendant is a resident of Oregon. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

## II.   PARTIES

3. Plaintiffs incorporate all paragraphs of this Complaint as if alleged in this Section.

4. Plaintiff Jeremiah Skaggs is a machinist and fabricator who is a resident of Idaho.

5. Plaintiff JWS Builders, LLC provides fabrication and building services in Idaho and the northwest.

6. Upon information and belief, Defendant Clinton Boone is an individual person who is a resident of Deschutes County, Oregon.

7. John Does 1-10 are unidentified and unknown plaintiffs who may be substituted into this cause of action as their identities are discovered.

8. John Does I-XXX are unidentified and unknown defendants who may be substituted into this cause of action as their identities are discovered.

### III.   ALLEGATIONS COMMON TO ALL COUNTS

9. Plaintiffs incorporates all paragraphs of this Complaint as if alleged in this Section.

10. In late 2019, a corporation named Isotex Health LLC, a Texas Limited Liability Company, (hereafter "Isotex") began developing a large facility in coordination with Lincoln County, Montana to process hemp crops into CBD products. As part of the arrangement, Isotex hoped to provide hundreds of jobs to people in Lincoln County, Montana.

11. As part of its development, Isotex hired Defendant as a subcontractor to render raw hemp plants into usable CBD for sale on the open market.

12. Defendant used a number of corporations and limited liability companies to carry on his business, including but not limited to Carter Fabrication, LLC, and Hemp Robotics, LLC.

13. Defendant founded and controls Carter Fabrication, LLC, an Oregon limited liability company, and Hemp Robotics, LLC.

14. The Defendant controlled and continues to control all of the entities in Paragraphs 12 and 13 such that there was a unity of interest between all the entities.

15. All of the entities in Paragraphs 12 and 13 are and were alter egos of the Defendant during the time period giving rise to the allegations in this Complaint.

16. Plaintiff Jeremiah Skaggs moved himself, his family and several employees from Idaho to Lincoln County, Montana and began work in October, 2019 on the project.

17. Plaintiffs and Defendant reached an agreement and joint venture to split the proceeds of Isotex's payment funding with 45% of the proceeds after expenses to be distributed to the Plaintiffs for their expertise in fabrication, and 55% to the Defendant for his expertise in hemp processing and procurement of the contract with Isotex. As an additional part of the joint venture and agreement, Defendant agreed to pay Plaintiffs for the time and materials incurred by Plaintiffs.

18. On or about November 25, 2019 Defendant's agent confirmed his individual control of the project and LLCs. In an e-mail sent from an email address belonging to Hemp Robotics, LLC, related to an invoice dispute, Defendant's sister stated, "I AM YOUR BOSS and I WILL FIRE YOU !!" Defendant's agent represented that she, and not any particular LLC, had direct

control of the fabrication operation and could terminate Plaintiffs' interest in the venture at any time.

19. Defendant frequently sent emails from different LLCs and used each LLC as his alter-ego and any particular LLC identity should be disregarded.

20. Upon information and belief, Defendant alleged that Isotex agreed to pay Defendant $3,360,500.00 to complete the joint venture project. Isotex allegedly paid Defendant $2,688,400.00 towards completion of the fabrication project, leaving an alleged shortfall of $672,100. Even with the alleged shortfall of $672,100, $2,688,400 was more than enough to complete the joint venture. Defendant has provided no proof that Isotex did not pay the contracted amount. In any case, the initial payment was sufficient for Defendant to create a joint venture with Plaintiffs and begin work.

21. In a letter from Defendant to Plaintiffs mailed on December 16, 2019, Defendant indicated that the funds owed in the amount of $672,100 by Isotex were owed to Plaintiffs and Defendant, an acknowledgement that the joint venture disregarded the formalities of the corporate entities to such an extent that Defendant had control over the entirety of the money paid by Isotex. Defendant further acknowledged in that letter that Plaintiffs were entitled to their proportionate share of the $672,100 shortfall and 45% of the profits of the project after expenses.

22. Sometime in December, 2019, out of apparent concern over Isotex's ability to pay the remaining $672,100 due to Plaintiffs and Defendant, Defendant rented a storage unit in his own name and moved various pieces of machinery, tools and equipment into the storage unit. Defendant refused to continue working on the fabrication project and requested that Plaintiffs do so as well.

23. On December 19, 2019, Defendant sent Plaintiffs a letter. In the December 19, 2019 letter the Defendant indicated that he had sole authority to distribute funds from the project. At that time, Defendant alleged that approximately $200,000 had been distributed to Plaintiffs for the fabrication of the hemp and CBD processing equipment. In other words, by December 19, 2019, Defendant had paid approximately $200,000 to Plaintiffs for time and materials and retained in excess of $2,400,000.00 for himself.

24. In the December 19, 2019 letter, Defendant indicated that the "last thing he wanted" was to stop working on the joint venture, but alleged that it was a necessary step in order to compel Isotex to pay the remaining $672,100 allegedly due.

25. Defendant did not take any other steps to recoup the $672,100 allegedly due, such as by filing a claim against Isotex, or reducing the scope of work to fit the amount paid.

26. Defendant did not return any money to Isotex or Plaintiffs after learning of the alleged shortfall. Instead, Defendant elected to wrongfully retain the entirety of the funds paid to complete the joint venture.

27. After December 19, 2019, Defendant became more difficult to reach, eventually cutting off contact with the Plaintiffs in January, 2020.

28. Through his words and deeds, the Defendant attempted to interfere with Plaintiffs' relationship with Isotex in order to retain payments made by Isotex to Defendant for the completion of a project that he did not complete. Defendant interfered with Plaintiffs' relationship with Isotex by instructing Plaintiffs to cease working on the joint venture fabrication project.

29. In his discussions with Isotex, Isotex was supportive of Defendant's completion of the fabrication project, but they did not have the requisite funds necessary to compensate Plaintiffs for time and materials because Defendant absconded with those funds.

30. As evidence of Defendant's individual control over his part of the joint venture, Defendant rented a storage unit in his own name in which he kept items belonging to Plaintiffs and the joint venture.

31. Based on representations made to the Plaintiffs, Plaintiffs kept working on the project into 2020 because they were obligated to do so under the terms of the joint venture.

32. At a meeting on January 25, 2020, Defendant terminated his agreement and business relationship with the Plaintiffs and absconded with in excess of $2,400,000.00.

33. At the time Defendant breached his agreement with Plaintiffs, he owed Plaintiffs $156,807.01.

34. At the time he mailed the documents in January, less than $300,000 of the $2,688,400.00 the Defendant received from Isotex had been paid or distributed.

35. Conservatively, Defendant absconded with over $2,000,000 for which no work was completed and that he was not entitled to retain.

36. Defendant stopped communicating with Plaintiffs in 2020 and then sent him a letter dated January 14, 2020 setting a January 25, 2020 meeting in which Defendant intended to disassociate Plaintiffs from the joint venture in order to wrongfully retain the remainder of the funds paid by Isotex.

37. On January 25, 2020, Defendant wrongfully terminated Plaintiffs from the joint venture.

### IV. CLAIMS FOR RELIEF

**A. Counts 1 through 4: Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Unjust Enrichment and Constructive Trust**

38. Plaintiff incorporates by reference all other paragraphs as if set forth herein.

39. Defendant entered into, or assumed the terms of, agreements, with attendant covenants of good faith and fair dealing, with Plaintiff to fabricate machinery consistent with a joint venture described herein.

40. Unjust enrichment is (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

41. Defendant was conferred money for the fabrication of machinery. Defendant had knowledge of the payments made to him. Under the circumstances explained in this Complaint, the acceptance or retention by the Defendant of the payment from Isotex would be done under such circumstances as to make it inequitable for the Defendants to retain the payments made by the Isotex.

42. Defendant breached the agreement and joint venture, its attendant covenant(s) of good faith and fair dealing and was unjustly enriched by failing to provide funds in his possession due the Plaintiffs for their past and future anticipated work on the joint venture. Defendant's breach of the agreement(s) and attendant covenant(s) of good faith and fair dealing caused Plaintiffs to suffer injuries and attendant damages, all while unjustly enriching Defendant.

43. A constructive trust should be imposed in this case on the funds received by the Defendant from Isotex because Defendant has an equitable duty to convey the funds to Plaintiff or others and Defendant would be unjustly enriched if permitted to retain the funds.

## B. Count 5: Intentional Infliction of Emotional Distress (PLAINTIFF JEREMIAH SKAGGS)

44. Plaintiff Jeremiah Skaggs repeats all allegations in the Complaint as if fully restated herein.

45. One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress.

46. Defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and should be considered intolerable in a civilized community.

47. Plaintiff Jeremiah Skaggs suffered serious and severe emotional distress because of Defendant's intentional acts. Plaintiff suffered damages and continue to suffer damages because of the Defendant's extreme and outrageous conduct.

## C. Count 6: Negligent Infliction of Emotional Distress (PLAINTIFF JEREMIAH SKAGGS)

48. Plaintiff Jeremiah Skaggs repeats all allegations in the Complaint as if fully restated herein.

49. An independent cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the Defendant's negligent act or omission.

50. Plaintiff Jeremiah Skaggs suffered serious and severe emotional distress as a reasonably foreseeable consequence of the Defendant's negligent acts or omissions.

51. Plaintiff Jeremiah Skaggs suffered damages and will continue to suffer damages as a result of the Defendant's extreme and outrageous conduct.

**D.  Count 7:  Constructive Fraud**

52. Plaintiffs repeat all allegations in the Complaint as if fully restated herein.

53. Defendant represented that he was committed to completing a joint venture in which Plaintiffs would be responsible for fabricating machinery and Defendant would be responsible for procuring a contract and obtaining funding from Isotex.

54. Defendant's representations were material in terms Plaintiff's commitment to moving to Montana, procuring employees, and fabricating equipment involved in the processing of hemp and CBD.

55. Defendant understood that his representations were false.

56. Plaintiffs were ignorant of the falsity of Defendant's representations.

57. Plaintiffs relied upon the truth of Defendant's representations to engage his expertise in the fabrication of machinery to process hemp and CBD.

58. Plaintiffs had the right to rely upon Defendant's representations.

59. Plaintiffs have been damaged through their reliance on Defendant's representations.

### E.  Count Eight: Deceit

60. Plaintiffs repeat all allegations in the Complaint as if fully restated herein.

61. Defendant willfully deceived Plaintiffs regarding the joint venture as described herein.

62. Defendant deceived Plaintiffs with the intent to induce Plaintiffs to perform work fabricating machinery for the Defendant.

63. Defendant did not have reasonable grounds to believe that he was truly interested in completing the joint venture because he abruptly disassociated

his partnership with Plaintiff in January, 2020 and absconded with millions of dollars in funds.

64. Plaintiffs have been damaged by Defendant's deceit because they relied upon Defendant's representations that Plaintiffs would be compensated for profits, time and materials, and profits in the fabrication of equipment to process CBD and hemp.

**F.     Count 9: Breach of Fiduciary Duty**

65. Plaintiffs repeat all allegations in the Complaint as if fully restated herein.

66. Montana common law and Section 35-10-405(2), MCA provides that Defendant owes a fiduciary duty to Plaintiffs in connection with his appropriation of partnership property or opportunity. Defendant breached this fiduciary duty of loyalty by claiming and retaining an extraordinarily large sum as his sole property and refusing to pay Plaintiffs their share.

67. Plaintiffs suffered damages as a result of Defendant's breach of his fiduciary duty.

**G.     Alter Ego (All Plaintiffs and the similarly situated individuals Against Defendant)**

68. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

69. The identity of the limited liability companies and other entities controlled by Defendant, including but not limited to Carter Fabrication, LLC, Hemp Robotics, LLC as well as other corporate entities referenced in this complaint or yet to be discovered, are one and the same as the Defendant. Defendant operates these companies with common ownership, shareholders, officers, directors and managers, common offices, centralized accounting, payment of wages by one entity to another entity's employees, common business names, services by employees of one entity on behalf of another entity, and/or unclear, uneven, or self-serving allocation of profits and losses between entities.

70. Based on information and belief, insufficient income from the operation of the joint venture was directed towards the reasonable and proper operation of the joint venture, and was instead channeled, directly or indirectly through other entities and Defendant himself.

71. Carter Fabrication, LLC, Hemp Robotics, LLC as well as other corporate entities referenced in this complaint or yet to be discovered are the alter egos of each other and/or other entities and/or other individual owners and shareholders or partners yet to be discovered, acting solely as conduits for the performance of their business and as a subterfuge to avoid liability and responsibility, defeat public convenience, justify wrong, or perpetrate fraud on persons dealing with them.

72. The fabricated corporate boundaries and designations of Carter Fabrication, LLC, Hemp Robotics, LLC as well as other corporate entities referenced in this complaint or yet to be discovered should be disregarded, and Defendant should be held individually liable for all sums owed to Plaintiffs.

**H.     Common Enterprise (All Plaintiffs and the similarly situated individuals Against Defendants)**

73. Plaintiffs and the similarly situated individuals incorporate by reference all other paragraphs as if set forth herein.

74. Upon information and belief, Defendant is the primary shareholder, director, managers, or affiliated/associated entities of, Carter Fabrication, LLC, Hemp Robotics, LLC as well as other corporate entities referenced in this complaint or yet to be discovered and many other any other unknown or other corporate entities yet to be discovered is Defendant.  The primary purpose of these entities is avoiding liability and responsibility for the operation, ownership and management decisions Defendant and defeating public convenience and perpetuating fraud.

75. Upon information and belief, Defendant is the owner, primary shareholder, of numerous entities created under the laws of this and other states for the purpose of owning, managing, operating, and channeling income and profits from the joint venture and other enterprises.

76. Defendant and/or the other individual owners yet to be discovered, operate these companies and facilities as a common enterprise with common management, common employees, common offices, centralized accounting, payment of wages by one corporation to another corporation's employees, common business names, services by employees of one corporation on behalf of another corporation, and/or unclear allocation of profits and losses between entities.

77. Based on information and belief, insufficient income from Carter Fabrication, LLC, Hemp Robotics, LLC as well as other corporate entities referenced in this complaint or yet to be discovered was directed towards the reasonable and proper operation of the joint venture, and was instead channeled, directly or indirectly through other entities, to the Defendant.

78. The existence of the corporate defendants, and/or the other corporations yet to be discovered, as separate entities should be disregarded, and Defendant should be held liable for all sums owed to Plaintiffs.

**I.  Punitive Damages (All Plaintiffs and the similarly situated individuals Against Defendants)**

79. Plaintiffs and incorporate by reference all other paragraphs as if set forth herein.

80. Defendant is guilty of actual malice as, defined in § 27-1-221(2), MCA, in that Defendant had knowledge of facts or intentionally, consciously, and recklessly disregarded facts that created a high probability of injury to Plaintiffs, and Defendant either deliberately proceeded to act in conscious, intentional or reckless disregard of the high probability of injury to Plaintiffs, or deliberately proceeded to act with indifference to the high probability of injury to Plaintiffs.

81. In order to prevent future repetition by Defendant or others, an award of punitive damages is appropriate to serve as a judicial exemplar of the consequences that befall those who act with a reckless failure to treat joint venture partners with the respect and care they deserve and that our society recognizes they are owed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request a judgment against Defendant as follows:

1. For compensatory damages caused by Defendant to Plaintiffs in an amount to be proven at trial;

2. For punitive damages as provided by law in a reasonable amount to be proven at trial;

3. For costs, interest, attorneys fees and pre-judgment interest as determined by the Court;

4. For the imposition of a Constructive Trust; and

5. For any and all further legal or equitable relief as the Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury in this matter.

DATED this 14th day of January, 2022.

/S/ MICHAEL C. DOGGETT

MICHAEL C. DOGGETT

DOGGETT LAW OFFICES, P.L.L.C.
MICHAEL C. DOGGETT
Doggett Law Offices, P.L.L.C.
2120 S. Reserve St., #130
Missoula, MT 59801
(406) 442-1160 (Telephone)
(406) 350-7856 (Facsimile)
mike@doggettlawoffice.net
Attorney for Plaintiff